ADMINISTRATOR OF ARTEMAS PRATT, GUARDIAN, *v.* JOEL C. BAKER, GUARDIAN OF CHARLES R. THOMPSON.

*Step-father, Guardian. Parent and Child. Minor.*

The plaintiff's intestate was both step-father and guardian of the defendant's ward. When the ward's mother was married to the intestate he received him, being about four years old, into his family, and supported him for nearly eleven years, in the same manner as his own children, furnishing proper food, clothing and schooling. The ward drew a pension from the United States government; and the intestate, soon after his marriage, was appointed guardian, received the pension and mingled it with his own funds, keeping no account of the transaction. Nothing was said about charging for the ward's maintainance. The intestate was worth only $8,000. On settlement of the guardianship account before the Probate Court. *Held,*

1. That when the intestate was appointed guardian, the relation that had existed between them was changed to that of guardian and ward; that he had the custody of the ward, the care of his estate, and was bound to support and educate him—R. L., s. 2431—and that he should be allowed for the support furnished.

2. But if there existed the relation of parent and child, the intestate was entitled to the ward's services during his minority, and the ward could not both deprive him of his services and deny him the remedy he claimed for his support.

3. R. L., ss. 2431, 2447, 2459, guardian of minor; may sell personalty to maintain ward.

APPEAL from the Probate Court. Heard on the report of a commissioner, September Term, 1882, VEAZEY, J., presiding.

It was adjudged that there was in the hands of the administrator of said Pratt $131.52, belonging to Charles R. Thompson, which sum he was to pay to Joel C. Baker, guardian; to be certified to the Probate Court.

The defendant excepted to the report of the commissioners, and to the ruling of the County Court. At the January Term, 1883, of the Supreme Court, the cause was remanded with this order:

"Judgment reversed *pro forma,* and cause remanded, with directions that the report be committed to the commissioner to further find and report what the said Artemas Pratt's ability was to maintain and educate his said ward, and whether or not he intended in the time of it to charge him with his maintenance and education, or how otherwise he intended in that behalf, and how much he in fact expended in and about educating said ward, and especially in sending him to the military school at Rutland."

The commissioner found in his supplemental report:

"FIRST.—I find that Artemas Pratt died in January, 1882, and that he was then worth, after the payment of his debts, the sum of about eight thousand dollars, and that he was worth that sum at the time of his marriage to Mrs. Thompson, May 1st, 1866, and that he was possessed of about the same amount of property during the time said Charles lived with him.

SECOND.—I find that Artemas Pratt intended at the time Charles was living with him to charge what was reasonable for his maintenance and education under the circumstances found; and that he intended, if Charles lived with him till he was twenty-one years of age as a member of his family and conducted himself as a dutiful and obedient son, to do well by him when he became of age; and that he stated, if Charles did so live with him and behave, that he would have a good start in life with the pension money when he became of age; and that he intended that Charles, when he became of age, if he lived with him till that time as above found, should have a liberal allowance out of the money received by him belonging to said ward. I further find that Charles remained with said Pratt only till March 16, 1877, when he was fifteen years and two months old or thereabouts, when he left him and did not live with him after that, except two winters when he worked for his board as found in a former report.

THIRD.—I find that Pratt paid for the tuition and clothing of said Charles for two terms at Kelley's military school in Rutland in 1874 or about that time, the sum of thirty-eight dollars, and that Charles boarded in his family while attending said school—two terms of fourteen weeks each.

It did not appear that Pratt paid any money for Charles' education otherwise.

The supplemental report was heard September Term, 1883. At this term the County Court ruled, *pro forma*, that there was in the hands of the administrator the sum of $1190.49. Both parties excepted.

The commissioner found in his first report, in part:

" Mrs. Thompson and her said children had no property at the time of this marriage, excepting a little household furniture owned by her.

Charles, on the marriage of his mother to Mr. Pratt, went with his mother to Mr Pratt's to live, and lived in the family of Mr. Pratt, as a member of Mr. Pratt's family, until March 16, 1877, ten years, ten and a half months, and during all said time he was treated by Mr. Pratt as a member of his family and as Pratt's children were treated; was sent to the district school in Pratt's school district, when there was a school kept therein, and was sent to Capt. Kelley's military school in Rutland two terms, and was clothed and fed and in all respects supported and cared for by Mr. Pratt, the same as his children were. Pratt paid all the bills and expenses of bringing up, supporting and schooling Charles.

\*        \*        \*

Pratt kept no account with Charles of the moneys paid out for him, nor for his support, board, clothing, schooling, etc., nor of the bounty and pension money collected. He used the same when collected as his own and kept no account of it, and he claimed before the Probate Court that he should be allowed the pension and bounty money for the support and schooling and expense of bringing up, etc., of Charles, for the time—ten years, ten and one-half months—he lived with him as above found. And the administrator makes the same claim before the commissioner.

Upon the evidence produced I find that it was worth one hundred dollars per year to support, school and bring up Charles as found above, or for the said ten years and ten and one-half months, $1,087.50.

\*        \*        \*

Upon the foregoing facts I am of the opinion that Pratt's claim for said allowance of $1,087.50 for the support, care and schooling of Charles, is valid under the law, and I so decide."

The commissioner found that the bounty and pension money received by Pratt was $1,190.49, and the balance, after deducting the expense for the support, etc., was $102.98, and with interest, $131.52, the amount allowed by the Supreme Court. The other facts are stated in the opinion of the court.

*Prout & Walker*, for the plaintiff.

Mr. Pratt was under no obligations to support his wife's children. Our statute only extends to natural relations. R. L., s. 2822. Such obligation is not found in the common law. *Tubb* v. *Harrison*, 4 Term. 118; *Cooper* v. *Martin*, 4 East. 76; *Billingsley* v. *Critcet*, 1 Bro. C. C. 237; *Commonwealth* v. *Hamilton*, 6 Mass. 273; Sch. Dom. Rel., ss. 237, 239, 338.

In a case where it appears that the ward has sufficient means to pay for his support, and that is this case, a step-father is no more responsible for the support of a step-child than his guardian, unless he has assumed it, although the child may be reared and brought up in the step-father's family. Reeve Dom. Rel. 152, 414; *Gay* v. *Ballou*, 4. Wend. 403; Sch. Dom. Rel., s. 335; *Andrus* v. *Foster*, 17 Vt. 556. The pension was granted as said in *Adams* v. *Newell*, 8 Vt. 190, "for the support and comfort of the pensioner." The guardian then had a right to apply it for that purpose. *See* Rev. St. U. S., ss. 4703-6; *Dawes* v. *Howard*, 4 Mass. 97; Reeve Dom. Rel. 465; 2 Kent Com. 191; 2 Story Eq., s. 1345; *Freto* v. *Brown*, 4 Mass. 575. Pratt intended at the time to charge what was reasonable. This is a question of fact and is settled by the finding. *McDaniels* v. *Harbour*, 43 Vt. 460; *Thrall* v. *Chittenden*, 31 Vt. 106.

*Joel C. Baker*, for the defendant.

Mr. Pratt was not entitled as matter of legal right to the custody or earnings of the children of his wife by a former marriage, nor is he under any obligations to support them; and yet if he takes them to his home and treats them as members of his family, he thereby assumes to support them, as he does his wife and his own children, and the other members of his family dependent upon him. *Williams* v. *Hutchinson*, 5 Barb. 122;

S. C., 3 N. Y. 312 ; 64 Ill. 383 ; 52 Wis. 357 ; *Commonwealth* v. *Hamilton*, 6 Mass. 273 ; *Robinson* v. *Cushman*, 2 Denio 149. The right to charge must rest upon contract, either express, or such facts as show a mutual understanding that he should have compensation. *Fitch* v. *Peckham*, 16 Vt. 150 ; *Doane* v. *Doane*, 46 Vt. 485 ; *Haines* v. *Currier*, 44 Vt. 468 ; *Andrews* v. *Foster*, 17 Vt. 556 ; *Sprague* v. *Waldo*, 38 Vt. 139. A husband, under such circumstances as these, can no more charge his wife's children by a former marriage for their support, than he could charge the wife for her support. Sch. Dom. Rel. s. 378 ; 11 Barb. 224 ; *Davis* v. *Goodman*, 27 Vt. 715 ; *Wilcox* v. *Wilcox*, 48 Barb. 327. A step-father, who occupies a position *in loco parentis*, is never allowed for supporting any member of his family when there was no contract, and no charge made as the support was being furnished. 2 Story Eq. s. 1346 ; *Brown* v. *Welch*, 12 C. E. Greene (N. Y. Eq.) 429 ; *Bright's Appeal*, 15 Rep 25 ; *In re Walling*, 35 N. Y. Eq. 105 ; Pratt could not contract with himself. *Mullen* v. *McDavitt*, 16 Gray, 404 ; 2 Kent Com. 192.

The opinion of the court was delivered by

ROYCE, Ch. J. The first report filed in this cause finds that Artemas Pratt, on the first day of May, 1866, married for his third wife Mrs. Thompson, who was then a widow, and had three minor children by a former marriage, of whom the said Charles K. Thompson was one. It is found by the second report, that at the time of said marriage, and ever after, Pratt was worth about $8,000 ; that the former husband of Mrs. Pratt and the father of said minor children, was a soldier in the United States service, and died in the army, and upon the marriage of their mother to Pratt the children became entitled to a pension of eight dollars a month, to be divided equally between them until they were respectively sixteen years old, and an additional pension of two dollars a month for each until sixteen years of age. Soon after the marriage of Pratt to Mrs. Thompson he was duly appointed guardian for the three children, and

as such thereafter received the United States bounty and pension to which they were entitled. At the time of said marriage Charles K. Thompson was about four years old, and he, with the other two children, was received into the family of Mr. Pratt and was treated as a part of the family and in the same manner that the children of Mr. Pratt by a former marriage were treated. Charles continued to reside in Mr. Pratt's family for ten years and ten and one-half months, doing such work on the farm as he was able and it was proper for him to do. There was never anything said between Pratt and his wife whether he should charge her or her children anything for the support of her children. During all the time that Charles lived with him he furnished him proper food, clothing and schooling, and such as it was proper and necessary for him to have; and the commissioner has found that what was thus furnished was worth $100 a year.

The question to be decided is, whether, upon the facts found, Pratt is entitled to have that sum or any other sum allowed in the settlement of his account as guardian. It is claimed that Pratt stood *in loco parentis* to Charles, and that he had so adopted him that without an express contract he could neither charge him for his maintenance nor be made liable for services that he might have rendered. Without questioning the authority of the cases relied upon to sustain that proposition, it remains to be seen whether his case falls within the rules there established. Pratt kept no account of the moneys that he received belonging to his ward, or for the expense of his maintenance. Those facts tend to show that he did not intend to charge for his maintenance, but are not conclusive. Pratt was under no legal obligation to support Charles, and Charles left him just when his services might commence to be valuable. If he had remained in Pratt's service, and labored for him until he came of age, Pratt would then have received some and perhaps full compensation for the money expended for his support while he did remain. But he did not receive anything, so that Charles was under an equitable obligation to pay him for such support,

and should be compelled to do so if it can legally be done. An obligation of such a character, it has been held, would support a promise to pay. The relation that commenced between Pratt and Charles was terminable at the will of Pratt; and such determination might be found by the acts and the conduct of Pratt, as well as by express declarations. When it appears that he was in the receipt of money belonging to his ward, of which he kept no account, but mingled it with his own funds, and appropriated it to the payment of current expenses, it is strong, if not conclusive, evidence that he regarded his obligation to support the ward without compensation terminated. But it is not necessary to dispose of the case upon that theory.

It is important to consider the source from which the money came that was received by Pratt. It was pension and bounty money that was granted to those children by the United States government on account of the services of their deceased father. The acts granting pensions and bounty to the widows and children of deceased soldiers do not prescribe the manner in which the money shall be used; but it is a matter of common knowledge that the object and purpose of the law was to provide them with the means of support of which they had been deprived by the death of the husband and father. Realizing that purpose, Pratt devoted the money that he received, presumably with the knowledge of his family, to providing them with support. He appropriated the money just as he would have been directed to appropriate it upon such showing as has been made if he had applied to the Probate Court for directions. Where an infant has property of his own, and his father is dead, or is not able to support him, he may be maintained and educated as may be fit, out of the income of property absolutely his own, by the person in whose hands the property is held, and a court of equity will allow all payments made for that purpose which appear upon investigation to have been reasonable. Sch. Dom. Rel. (3d ed.) s. 238, and cases cited. And a father if he be in needy circumstances may maintain his children out of any fund which is duly vested in him for that purpose. In *Cooper* v. *Martin*, 4 East. 76, the plaintiff, a man with a small

income, supported the defendant, a son of his wife by a former marriage, during his minority without any contract having been made with reference to such support. The son had means with which he might have paid for his support; and the court held that upon application to the Court of Chancery an order would have been made directing appropriation of the means of the son to pay for his support.

When Pratt was appointed guardian of Charles, the relation that had existed between them was changed to that of guardian and ward. As such guardian, the custody of the ward and the care and management of his estate were confided to him, and he was bound to support and educate him. *See* s. 2431, R. L. By s. 2447 he was bound to dispose of such estate and effects as might come into his hands according to law and for the best interests of the ward. By s. 2459 he was directed to pay the necessary expenses of the maintenance and education of the ward out of his estate. If any one else had furnished the support at the request of the guardian he could have been compelled to pay for such support as far as he had funds of the ward; and we see no reason why he may not, in the settlement of his account, be allowed for the support furnished by himself. Assuming that Pratt received Charles into his family as a child, and treated him as such, and maintained him during the years when he was unable to earn his living, he should owe Pratt the duty that a child owes to a parent—that is, the right to his time and services during his minority. He cannot deprive him of that time and service and deny him the remedy that he claims for the support furnished. Our judgment is based upon the facts found in the reports that were not dependent upon or influenced by the testimony that was objected to, so that we have no occasion to decide whether that testimony was admissible or not.

The judgment is reversed, and judgment that there is in the hands of the administrator of Artemas Pratt $131.52 belonging to Charles K. Thompson with interest thereon since Sept. 12, 1882, which he is to pay to Joel C. Baker as guardian; and ordered to be certified to the Probate Court.